in a response received at the Local 9 office on January 21, 2004. (VC: 58; Exhibits X-1 and X-2).

The Local 9 Officers and Executive Board members appeared for the hearing on January 26, with their attorney, James F. Norton who was also a member of Local 9, and who they had selected to serve as their representative. Ms. Boardman and Attorney Gleichman, as SEIU Assistant General Counsel, were presided. Atty. Gleichman had been assigned by President Stern to serve as Ms. Boardman's representative at the hearings. Ms. Boardman and Atty. Gleichman refused to allow Mr. Norton to attend the hearings. The Officers and Executive Board members also refused to attend the hearings without their representative. Ms. Boardman and Atty. Gleichman dismissed the charges against President Stern; and proceeded with the charges against the Officers and Executive Board members.

On January 30, President Stern removed the officers and executive board members from office on the basis of a preliminary report and recommendation of Christine Boardman.

The Officers and Board members were denied their rights under both the International Constitution and § 411(a)(5) of the LMRDA to written specific charges. Irrespective of which provision of the Constitution the President purported to utilize to discipline the officers and board members the fact is that they were removed from office after a hearing into complaints asserted against them by President Stern in his January 6, 2004, notice of hearing. That notice of hearing was the only notice about these allegations against the Officers and Executive Board Members. The notice does not identify the complainants, and does not specify the events or acts which constituted the

16

basis for the complaints, and President Stern and the International refused to provide that information despite repeated requests.

The Officers and Board members were denied their rights to a reasonable time to prepare their defense. Their requests for the specific information they needed to prepare a defense were denied; they received notice of that refusal only five days before the hearings; and they were denied the right to have their chosen member represent them at the hearing. Under these circumstances they could not fairly prepare for the hearing.

The Officers and Board members were denied their rights to a full and fair hearing.

By assuming jurisdiction of the charges, and converting the proceedings into an internal needs proceeding, President Stern appointed himself as the tribunal of not only the charges against President Costa and Secretary-Treasurer Sullivan, but also the complaints against the entire Executive Board which President Stern listed in his January 6th notice of hearing, and the accusations against him for violations of the Local 9 Agreement asserted by the Executive Board.

By ordering a hearing into complaints he received from Local 9 members, instead of requiring those members to provide written charges which included the acts and events that formed the basis for their complaints as required by the Constitution and the statute and by denying the Executive Board's requests for information, President Stern acted as both emissary and advocate for the complaining members.

By ordering that the accusations against him for violations of the Local 9 Agreement be addressed in the proceedings, he assigned himself to determine his own culpability.

President Stern also assigned one of his attorneys, Norman Gleichman, to advise and

serve as the representative of the hearing officer and to examine witnesses at the hearing. Throughout the hearing, Attorney Gleichman sat next to the hearing officer, and effectively presided over at least that part of the hearing attended by the Officers and Executive Board members. At the same time, the Officers and Executive Board members were denied the right to have their chosen member represent them at the hearing.

Although a completely unbiased and disinterested tribunal may not necessarily be required in order to satisfy the fairness requirement under § 411(a)(5), a union tribunal that has been "substantially actuated by improper motives," will justify a ruling of bias and consequently the absence of fairness in a proceeding. Parks v. International Broth. of Elec. Workers, 314 F.2d 886, 993-994 (4th Cir. 1963). The improper motives of the SEIU and President Sterns are demonstrated by their violations of the Local 9 Agreement, the assignment of International representatives Carolyn McCullough and John Ronches to remove control of the bylaws preparation process from the Local leadership, the failure to refer complaints from local union members to the Local for initial review and attempted resolution, the refusal to identify the complainants and the refusal to provide any information about the complaints in advance of the hearing. The plaintiffs submit that there was never any intent on the part of the SEIU or President Stern to hold a full and fair hearing, but rather the intent to simply remove the Local 9 leadership from office in order to appoint officers and board members who would follow the Internationals direction in how to organize the local's affairs. If the full and fair hearing requirement stands for anything, it must stand for a hearing in which the outcome is not pre-ordained.

18

**(c).    The SEIU violated Article III §§ 3 (a) and (b) of its Constitution & Bylaws, and § 411 (a)(1) of the LMRDA, by excluding a member from the hearings.**

Section 411 (a)(1) of the Labor Management Reporting and Disclosure Act provides:

> **Equal Rights**    Every member of a labor organization should have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organizations, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitutions and bylaws.

The eligibility criteria for membership in any local union of the SEIU is stated in Art. III §3 (a) and (b) of the SEIU Constitution and Bylaws which provide:

> **Section 3(a).**  Any person employed in any employment over which this International Union claims or has jurisdiction shall be eligible to be considered for membership in a Local Union.... Jurisdiction may also be construed as including service within a Local Union...but each Local Union shall have the option to determine whether an employee of the Local Union may be eligible for membership in the Local Union.
>
> **(b).**  Self-employed individuals doing work within the jurisdiction of this international union may be eligible for membership in Local Unions...

Section 3(b) contains additional provisions under which a local union may seek authority from the international president, subject to appeal to the International Executive Board, to exclude self-employed applicants from membership. These provisions imply that it is the local, rather than the international, that can determine in the first instance, whether a self-employed applicant may become a local union member.

Mr. Norton is a self-employed individual, who is performing service within and for Local

19

9, and as such is within the jurisdiction of the SEIU and therefor eligible for membership. Local 9 has not sought authority from the SEIU to exclude Mr. Norton from Local 9 membership, but has instead welcomed him as a member. Mr. Norton applied for Local 9 membership, has paid his initiation fee and dues, and has been accepted by Local 9 and is a member in good standing. His exclusion from the hearing on January 26, 2004 by Ms. Boardman and SEIU attorney Norman Gleichman, to which all other Local 9 members were invited and permitted to attend therefor violated his right to attend and to participate in union meetings, and the rights of the officers and executive board members to representation at the hearing by a member of their choosing.

### (d). The SEIU violated its Constitution and Bylaws, and §§ 402(h) and 462 of the LMRDA by imposing a de facto trusteeship on Local 9.

The LMRDA defines trusteeship as a receivership or a method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws. Labor-Management Reporting and Disclosure Act, 29 U.S.C. §402 (h). The ability to establish a trusteeship is further limited by § 462 of the LMRDA:

> **§ 462 Purposes for establishment of trusteeship**
> Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization (imposing the trusteeship) and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

The SEIU's Constitution and Bylaws require that a hearing be held for the specific purpose of determining whether a trusteeship is warranted, before a trusteeship may be established. (Exhibit D, Art. VIII §§ 7(a)-7(f), p. 14-16)

Since October 1, 2003, when the SEIU issued the Charter establishing Local 9, the SEIU has suspended the autonomy of Local 9, and usurped the authority and infringed upon the rights of Local 9 and its members, by the following actions:

1. Reserving to itself the right to decide when Local 9 may hold elections;

2. Taking control of the process for creating local constitution and bylaws, by appointing a bylaws committee, by determining when the committee will meet, by directing the committee meetings, and by ordering the Local President to refrain from communicating with her membership about the bylaws;

3. Refusing to review and to approve the proposed Constitution and Bylaws forwarded to the SEIU on December 17, 2003;

4. Removing President Costa and Secretary-Treasurer from their offices after only four months, without cause, and without affording them the protections from discipline under the SEIU Constitution and Bylaws;

5. Removing President Costa and Secretary-Treasurer from their offices after only four months, without cause, and without affording them the protections from discipline under the SEIU Constitution and Bylaws;

6. Removing the Executive Board members from their offices after only four months, without cause, and without affording them the protections from discipline under the SEIU Constitution and Bylaws.

7. Appointing new interim officers and executive board members on January 30, 2004, contrary to the wishes of the membership,

8. Refusing to recognize the officers elected on January 14, 2004.

The power to determine who the officers of a local union shall be, to create in the first instance, a constitution and bylaws by which the local union shall be governed and to decide when local elections shall be held, are powers and duties of local unions and are within the realm of rights customarily reserved to local unions, and not to the International affiliate. By usurping these powers, the SEIU has imposed a defacto trusteeship upon Local 9, without observing any of the procedural requirements for the imposition of a trusteeship set forth in the SEIU Constitution and Bylaws.

The SEIU has effectively assumed complete control over the operation of and the affairs of Local 9, by usurping these powers. The SEIU has removed the officers and executive board members that enjoy support from the majority of the members as evidenced by the results of the election of January 14th, 2004, and has appointed in their places members who are working with the International to create a local union government that the International can control by directing the interim officers to create a constitution and bylaws under which a non-member, hired by the local, will run the affairs and operations of the local, and by directing the local officers to hire the candidate of the International's choice. In this fashion, the International can maintain control over the affairs of the local, and can use the financial resources of the local for its own purposes.

In <u>Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of telephone Workers</u>, 261 F.Supp. 433, 434 (USDC Dist. of Mass., 1966) the International President suspended a Local's charter and assigned an International Representative to run the affairs of the Local, for disregarding an order involving strike action, under a provision of the International Constitution that empowered the President to suspend the charter of any Local Union that refused to observe such orders. The Court determined that the International's action was in fact a trusteeship as defined in 29 U.S.C. § 402(h). 261 F.Supp. At 434-435.

In <u>Navarro v. Gannon</u>, 385 F.2d 512 (2nd Cir. 1966) the court affirmed the issuance of an injunction against an International Union that was attempting to control a meeting of one of its Local Unions. The Court found that the International's action fit within the definition of trusteeship under 29 U.S.C. § 402(h). was in fact a trusteeship. (385 F.2d at 517). The Court stated that although the International Constitution contained provisions which closely tracked the statutory requirements for establishing trusteeships in 29 U.S.C. §§ 402(h) and 462, giving it the authority to establish a trusteeship, it acted without following those procedures, and therefor "the

autonomy of the local union should be our primary concern." 385 F.2d at 518-519.

The SEIU's actions against Local 9 are far more controlling than the actions attempted by the International Union in Navarro.

Under § 464 of the LMRDA, the district court has the jurisdiction to grant injunctive relief for violations of § 462, LMRDA, restricting the establishment of trusteeships. The degree and nature of control that the SEIU has assumed over the affairs of Local 9 must be regarded as a defacto trusteeship, and as such, it is in violation of § 462, and may be enjoined by this court.

**B.    The Plaintiffs will suffer irreparable harm if
        the Defendant's actions are not enjoined.**

As a result of the actions of the SEIU, the members of Local 9 have been denied the benefits of the Local 9 Agreement including the right to have the Officers and Executive Board members who were initially appointed as the Interim leaders as their officers and members of their executive board for a period of at least one year, and have been denied the right to create their own constitution and bylaws, as the SEIU had agreed to in the Local 9 Agreement.

The members of Local 9 have been deprived of the autonomy enjoyed by other SEIU locals and to which they are entitled as a result of the SEIU's imposition of a trusteeship without the procedural requirements of the SEIU Constitution and Bylaws, and in violation of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 402(h) and 462.

The Interim Officers and Executive Board members, Mary Ellen Costa, Roberta Sullivan, Joanne Vitti, Joseph Harter, Mary Ellen Foley-Perry, Eileen Ridge, Robert Hossack, Kathleen Barry, Mary Sullivan, Vicki Sutherland, Aixa Gonzalez, Judy Maloney, Donna Ellis, Don Johnstone, and Donna Brennan, have been denied the right to remain in office for a period of at least one year as the SEIU agreed to in the negotiation of the Local 9 Agreement, and have been

23

removed from office in violation of their rights under the SEIU Constitution and Bylaws, and in violation of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411 (a)(5).

The Plaintiffs and the members of Local 9 have been denied their rights under the Local 9 Agreement, under the SEIU Constitution and Bylaws, and under the provisions of the Labor-Management Reporting and Disclosure Act, and as a consequence, the SEIU maintains complete control over Local 9. None of these injuries is compensable with money damages. Where plaintiffs suffer substantial injuries that cannot be accurately measured or adequately compensated by money damages, the plaintiffs have suffered irreparable harm. Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 222 (1st Cir. 2003); Ross-Simons of Warwick, Inc. V. Baccarat, Inc. 102 F.3rd 12, 18-19 (!st Cir, 1996).

## C.    Balance of Hardships

The SEIU's continued control over the affairs and operations of Local 9 will compound the Plaintiffs' injuries. By its actions, the SEIU has maintained control by eliminating the Officers and Executive Board members who were entrusted by the membership to negotiate their collective bargaining agreements and who would put into place a local governing structure that would place and keep control within the power of the membership. The rights of the membership of Local 9 to exercise such control over the affairs and operations of the local can be protected only if the SEIU is required to honor its agreements in the establishment of the Local 9 Agreement and its obligations under the Constitution and Bylaws and under the law. The Defendant SEIU will suffer no harm by having to live up to its contractual and legal obligations. The balance of hardships clearly favors the Plaintiffs.

### D.  Public Interest Considerations

While the public at large may not be directly affected if the Plaintiffs' request for injunctive relief is granted, the Plaintiffs submit that the public interest can rarely, if ever, be negatively affected by requiring a party to honor its contractual and legal obligations. On the other hand, allowing a parent labor organization to take complete control over a subordinate labor organization contrary to such obligations will certainly discourage participation in labor organizations, and frustrate the Congressional policies to protect the rights of employees in their relations with labor organizations, and to eliminate or prevent improper practices on the part of labor organizations and their officers and representatives which distort and defeat the policies of the Labor Management Relations Act 29 U.S.C. § 141 et seq.

### CONCLUSION

For the foregoing reasons, the Plaintiffs, Mary Ellen Costa and Roberta Sullivan, on behalf of themselves and the members of Local 9, respectfully request that this Honorable Court grant the Plaintiffs' request for injunctive relief.

Respectfully submitted,

March 9, 2004
Date

James F. Norton   (BBO# 374190)
Paven & Norton
15 Foster Street
Quincy, MA 02169-5307
(617) 770-0000 Ext. 124
Fax: (617) 770-4091

25