**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Ca No. 04 CV10488 JLT

|   |   |
|---|---|
| MARY ELLEN COSTA et al. | ) |
|  | ) |
| Plaintiffs | ) |
|  | ) |
| v. | ) |
|  | ) |
| SERVICE EMPLOYEES | ) |
| INTERNATIONAL UNION | ) |
|  | ) |
|  | ) |

*MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION OF SEIU*
*TO PLAINTIFFS' FIRST AND SECOND MOTIONS*
*FOR TEMPORARY RESTRAINING ORDER*

Introduction

This Memorandum is submitted in support of the Opposition of defendant, Service Employees

International Union ("SEIU") to the Plaintiffs' First and Second Motions for a Temporary

Restraining Order. The Plaintiffs', who were former interim officers of SEIU, Local 9 whose

terms expired on January 31, 2004, seek in their first motion to have this Court prevent a hearing

on charges that have been brought against them. The allegations involve issues that, in the

opinion of SEIU's President, seriously jeopardize the interests of Local 9, including the refusal

of the Plaintiffs to deliver property belonging to Local 9 to the Local's current interim officers,

the Plaintiffs' continuing to hold themselves out as officers of Local 9, the maintenance of a

website that claims falsely to be the official website of Local 9, and substantial and possibly

unauthorized and/or improper payments to themselves and to their counsel. Exhibit Z to

Plaintiffs' First Motion. In their second motion, Plaintiffs seek a temporary restraining order to

run until October 1 ordering SEIU to take a number of extraordinary steps, including restoring

them to office, notwithstanding the expiration of their interim appointments, and to approve a Constitution and Bylaws that was not the result of democratic procedure within Local 9 and that fails to comply with requirements of the International Constitution. The Plaintiffs have no likelihood of success on the underlying merits of their action. Moreover, the Plaintiffs have suffered no harm whatsoever. Their complaint and affidavits speculate about possible injury that they may suffer. However, to this point, since no hearing has even occurred, it is completely premature for the Plaintiffs to be seeking injunctive relief when no imminent harm is threatened. Conversely, it is absolutely critical to the interests of SEIU, Local 9 and its members, for SEIU to investigate these charges, which, if true, are of the gravest consequence to the functioning of Local 9.

### Facts

On September 16, 2003, the Service Employees International Union  and a committee of Boston Medical Center nurses executed an Agreement to Establish an SEIU Local for Nurses at Boston Medical Center." Plaintiffs' Verified Complaint (hereafter "VC"): Ex. A. On October 1, 2003, SEIU International President Andrew Stern sent a letter to Mary Ellen Costa, announcing the establishment of Local 9 and naming Costa Local 9's provisional President and Roberta Sullivan the provisional Secretary-Treasurer and a thirteen member provisional Executive Board. The provisional appointments were to terminate when Local 9 elected officers and an Executive Board, or on December 31, 2003, "whichever is earlier." Id. Attached to President Stern's letter were Local 9's interim Constitution and Bylaws, "which will govern Local 9 until the adoption of a permanent Constitution and Bylaws." Id.  The Plaintiffs raised no objections either to the

duration of their interim appointment, i.e., until no later than December 31, 2003 or to the

Temporary Constitution and Bylaws.  VC: Ex. C.

The temporary Constitution and Bylaws of SEIU Local 9 provided, *inter alia*, for the

following:

### Article V – Permanent Constitution and Bylaws

The Union shall, as soon as possible, adopt and present to the International President of SEIU for approval a permanent Constitution and Bylaws in order that election of officers may be scheduled pursuant to the schedule established by the International President of SEIU.

### Article VI – Local Union Elections

The Schedule for the initial election of Local Union Officers shall be established by the International President.  The schedule of subsequent elections of Local Union officers will be governed by the permanent Local Union Constitution adopted at the membership and approved by the International President.

There is no provision in these interim Bylaws for a one-year appointment of the interim

officers.  Contrary to Plaintiffs' allegation that in the discussion leading to the Agreement

(Ex. A), the parties agreed that the interim appointments would last for one year, there

was no such agreement.  Affidavit of Carolyn McCullough.  As of this date, President

Stern has not yet approved a permanent Constitution for Local 9.  VC: Exs. P and Y.

On December 23, 2003, with the expiration of the interim appointments of Costa and

Sullivan looming, President Stern re-appointed them and a provisional executive board for a one

month period until January 31, 2004.  VC: Ex. P.  Despite receiving complaints from the

membership about Costa and Sullivan, and despite the fact that the interim leadership had not yet

submitted an acceptable Constitution and Bylaws that he could approve, President Stern made

these reappointments; however, his December 23 memorandum also noted that a hearing soon

would be held to address concerns about Local 9.

Pursuant to my order dated October 1, 2003, appointing interim officers of SEIU Local 9, the appointments expire upon election of officers and executive board members under the permanent local constitution and bylaws, or on December 31, 2003, whichever is earlier. Under Article XV of the International Constitution and my October 1 directive, any proposed permanent constitution and bylaws must be submitted to the International Union for approval. Under Article V of the Temporary Constitution and bylaws of Local 9, the schedule for officer elections under a permanent constitution and bylaws will be determined by the International President. No permanent constitution and bylaws has to this date been approved for Local 9 and, consequently, I have not yet scheduled officer elections.

In view of the member complaints I have received since the chartering of Local 9 concerning the process for adopting a permanent constitution and bylaws, and other issues, it is my intention to appoint a hearing officer to hold a hearing to inquire into the internal needs of Local 9. Notice of this hearing will issue shortly.

On December 26, 2003, Lorraine Riley and Eileen Ridge, as members of Local 9, brought charges against then-provisional President Costa and then-provisional Secretary-Treasurer Sullivan, alleging that they had violated the SEIU Constitution and By-Laws. The charges were directed to Anna Burger, International Secretary-Treasurer for SEIU, because the temporary Local 9 Constitution and Bylaws—which are still the only constitution and bylaws in effect for Local 9—contain no provision for bringing such charges at the Local level. The charges allege eight violations of the SEIU Constitution. The charges allege that Costa and

4

Sullivan followed a "completely undemocratic" process in attempting to draft and have approved a permanent constitution and bylaws for Local 9, both in the initial drafting of the first proposed constitution and bylaws—which were rejected by the International Union because they violated federal law and the SEIU Constitution—and in later attempting to redraft the Local 9 constitution in order to receive International approval. The charges alleged that Costa and Sullivan insulted members who disagreed with them, "including on their website, and in a November 11 letter." Finally, the charges also state that Costa and Sullivan engaged in self-enrichment and conflicts of interest by putting in place large salaries and benefits for themselves, "(initially $ 18,850 monthly for the two of them, and later rising to levels of up to $135,000 annually in salary alone for one of them)", and by choosing as Local 9's bank one at which Costa's husband served as Vice President. VC: Ex. Q.

On January 6, 2004, President Stern sent out the Notice of Hearing he had mentioned in his December 23rd correspondence. VC: Ex. T. SEIU President Stern's "Notice of Hearing" responded to more than just the charges brought by Riley and Ridge. While noting that Ridge and Riley had filed charges against Costa and Sullivan asserting that the two interim officers had engaged in "self-enrichment and conflicts of interest," President Stern's notice also states that "[s]ince the chartering of SEIU Local 9" he had been made aware of complaints from Local 9 members regarding "a variety of issues related to the democratic functioning of the local." President Stern's notice also mentions that on December 17, 2003, certain interim officers and members requested a hearing under the SEIU Constitution and Bylaws regarding the following three issues: "(1) whether SEIU Local 2020 (formerly SEIU Local 285) must pay to Local 9 funds allegedly collected and held for the benefit of the BMC bargaining unit while members were represented by Local 285, (2) whether SEIU 'violated its agreement with SEIU Local 9 to

5

appoint the current interim officers and executive board for a term of one year, rather than 90

days as at present?', and (3) 'whether the SEIU violated its agreement with SEIU Local 9 by

failing or refusing Local 9's request for start-up funds?'" VC: Ex. T.

> The complaints and charges emanating from Local 9 take on particular importance in light of Article V of the Temporary Constitution and Bylaws of the Local, currently in effect, which calls for expedition in the adoption, and presentation to SEIU for approval, of a permanent constitution and bylaws. The first proposed permanent constitution and bylaws submitted by the interim leadership of Local 9 in October 2003 was not approved by my office because of unlawful provisions restricting eligibility to run for Local 9's office, other provisions in conflict with the SEIU Constitution and Bylaws, omissions of language required in local SEIU constitutions, and failure to follow democratic procedures in the adoption of the proposed bylaws. The interim leadership submitted a second proposed constitution and bylaws by letter dated December 17, 2003. Review of those bylaws and the process by which they were purportedly adopted has not been completed. Meanwhile, the terms of office of the interim officers (including executive board members) expired on December 31, 2003. In order to provide for continuity in the operation of Local 9, I reappointed the interim leadership of the local for an additional month, until January 31, 2004.

Id. President Stern assumed original jurisdiction of the internal charges, pursuant to Article

XVII, Section 2(f) of the SEIU Constitution and Bylaws. He appointed International Executive

Board Member Christine Boardman as hearing officer with the following mandate:

> The hearing officer should examine and make a report and recommendation on the question of the democratic functioning of the Local, the adequacy of the process for adoption of a permanent constitution and bylaws for Local 9 and whether the proposed local constitution and bylaws submitted on December 17, 2003, should be approved by the International Union, the issues presented in the December 17, 2003, request for a hearing, and the internal charges filed against the Local 9 interim officers.

Id.

President Stern also stated that Costa and Sullivan would not be suspended before the hearing

was held, as Riley and Ridge had urged in their letter to the International Secretary-Treasurer.

> In their charges the charging parties have requested the suspension of the interim officers pursuant to Article XVII, Section 2(e) of the SEIU Constitution

and Bylaws. Given that the terms of the interim officers currently expire on
January 31, 2003, I do not see the need to suspend them from office. Rather I
direct the hearing officer to make recommendations concerning the appointment
of interim officers and executive board members.
Id.

A Hearing was held on January 26, 2004. At the Hearing, witnesses testified and forty-

six exhibits were entered into evidence. The former leadership of Local 9 disrupted the hearing

and walked out of the meeting without presenting evidence. The Hearing Officer found the

following:

> From the testimony and evidence presented at the hearing, it is plain to me that
> the interim administration of Sister Costa and her supporters was unable to unite
> the nurses behind a common goal of creating a democratic, broad-based local that
> welcomes a diversity of views on important matters of Union governance. The
> current interim leadership has been unwilling to work cooperatively with the
> International Union in an effort to adopt lawful permanent by-laws, and has
> blatantly disregarded International Union directives on implementing a process
> that would solicit the views of the entire Local 9 membership for input into a draft
> permanent local constitution. Nurses with views opposed to those of the current
> interim leadership have been subjected to ridicule and harassment. There was
> convincing testimony on the limited distribution and publication of the draft
> bylaws and constitution, as well as the inadequate notification to the membership
> of a vote on the bylaws.
>
> I left the record open until February 2, 2004, for the submission of
> supplemental materials for the record. The interim officers did not submit
> supplemental evidence to me for the record.
>
> In light of the above, I have recommended to President Stern that new
> interim leadership for Local 9 be appointed as soon as possible. I take
> administrative notice of President Stern's appointment of new interim leadership
> for Local 9 on January 30, 2004 effective January 31, 2004.
>
> Notwithstanding the efforts set forth above to disrupt the hearing, it is my
> intention to offer the former interim leadership of Local 9 another opportunity to
> submit evidence on the issues raised in the December 17, 2003, request for
> hearing, and on the internal charges. I have therefore determined to permit the
> scheduling of a further day of hearing, at the option of the former leadership of
> Local 9, to take evidence on the Phase 1 issues and the internal union charges,
> according the procedures and rulings previously issued by me in this case. The
> former interim leadership may also make a written submission on the Phase 1
> issues in lieu of presenting evidence at a hearing. Further, pursuant to Article
> XVII, Section 4 of the SEIU Constitution and Bylaws, Sisters Costa and Sullivan
> may, in lieu of presentation of evidence at a hearing on the internal charges,
> supply me with a written defense to the internal charges, in the form of sworn
> testimony.

Any request for a hearing, or submission of written materials as set forth above, must be received by me no later than February 27, 2004.  Requests or submission should be forwarded to me in care of the SEIU Legal department, 1313 L Street, N.W. Washington, D.C. 20005

Aff. of McCullough, Para ___, attaching as Exhibit ___ "Partial Report and

Recommendation to the International President."  No action has been taken against Costa

or Sullivan as a result of the internal charges notwithstanding that they have provided no

evidence to the Hearing Officer.

On January 30, 2004, with the terms of the provisional leadership set to end on the

following day, President Stern appointed new provisional leaders for Local 9.  He appointed

Lorraine Riley as provisional President, Eileen Ridge as provisional Secretary-Treasurer, and a

seven member provisional Executive Board.  VC: Ex. Y.  The terms of the new provisional

leadership are to expire no later than April 30, 2004.  Id.  President Stern instructed the new

interim leaders to work to accomplish what Costa and Sullivan had been unable to do.

The above named officers and executive board members should proceed immediately to develop a broad-based process for soliciting the views of a wide cross-section of Local 9 members on a permanent constitution and bylaws for Local 9, and should submit a draft permanent constitution to the International Union for approval. Following approval of a proposed constitution and bylaws by the International Union and the Local 9 membership, I will schedule local officer elections pursuant to my authority under Articles V and VI of the temporary constitution and bylaws of Local 9.

Id.

On March 4, 2004, President Stern appointed a hearing officer to consider charges filed

on February 17 by interim officers Riley and Ridge against the former interim officers, Costa and

Sullivan, who are now two members of Local 9 and hold no position with the Local.  VC: Ex Z.

His Appointment of Hearing Officer and Notice of Internal Charges specified the reasons that the

International Union had assumed original jurisdiction of the charges:

> The charges allege, among other things, that the charged parties have failed to deliver property belonging to local 9 to the Local's current interim officers, have refused to recognize the duly appointed officers of Local 9, have continued to hold themselves out as officers of Local 9, have jeopardized members' grievances by failing to turn over grievance records to Local 9's interim leadership, have maintained a website that falsely claims to be the official website of Local 9, made substantial withdrawals from the Local's bank account in the days preceding the expiration of their terms of office, and made substantial and possibly unauthorized and/or improper payments to themselves and their counsel.

VC: Ex. Z. pp. 1-2. As required by the SEIU Constitution, the Notice provided at least ten (10)

days notice of the hearing. VC: Ex. D., Article XVII, section 2(f)ii.

## III.    ARGUMENT.

### A.    PLAINTIFFS HAVE FAILED TO SATISFY THE STANDARDS FOR A TEMPORARY RESTRAINING ORDER

A motion for a temporary restraining order, like a motion for a preliminary injunction, is

addressed to the sound discretion of the court. LeBeau v. Spirito, 703 F.2d 639, 642 (1st Cir.

1983). The standard to be used by the District Court in ruling on a motion for a temporary

restraining order or preliminary injunction is well established. The moving party's burden is to

establish that (1) he has a substantial likelihood of success on the merits; (2) there exists, absent

the injunction, a significant risk of irreparable harm; (3) the balance of hardships tilts in his favor

and (4) granting the injunction will not negatively affect the public interest. Langlois v. Abington

Housing Authority, 207 F.3d 43, 47 (1st Cir. 2000); Lanier Professional Services, Inc. v. Ricci,

192 F.3d 1 (1st Cir. 1999); I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir.1998);

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir.1996). TEC

Engineering Corp. v. Budget Molders Supply, Inc., 82 F. 3d 542 (1st Cir. 1996); AFL-CIO

Laundry and Dry Cleaning Union v. Local 66, AFL-CIO Laundry, 70 F3d 717, 718 (1st Cir.

1995).  As this memorandum will demonstrate plaintiffs have failed to carry the burden required for temporary relief.

### 1.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE A SUBSTANTIAL LIKELIHOOD THAT THEY WILL PREVAIL ON THE MERITS.

Although Plaintiffs attempt to style their allegations as ones implicating union democracy, in reality Plaintiffs complain and seek the Court's intervention because they are unhappy with the way the International Union has asserted its jurisdiction over Local 9, including over Local 9's former provisional leadership, and because they disagree with SEIU's interpretation of its own Constitution.

The principle that federal courts should refrain from interfering with the internal operations of the unions has been clearly and emphatically repeated by the First Circuit.  In Carpenters Local 48 v. United Brotherhood of Carpenters, 90 F. 2d 1042 (1st Cir. 1990) the court considered the contention that an international union had literally "attempted to snuff out Local 48's life" by merging it into a larger local.  920 F. 2d 1049.  Local 48, a Fitchburg affiliate of the Carpenters had been ordered by the Carpenters' International to merge into Local 107, the Worcester local.  Local 48 voted to oppose the merger and appealed the merger order.  The appeal was denied and Plaintiffs sued under the LMRDA and the LMRA.  The district court granted summary judgment to the International.

In reviewing the district court decision the First Circuit emphasized that

> [c]ourts have neither a monopoly on fairness nor a sufficient expertise in the administration of labor organizations to warrant pervasive judicial intervention in union affairs…Conscious of the value of non-interference, we align ourselves squarely with those courts that have said judges should refrain from second-guessing labor organizations in respect to plausible interpretations of union constitutions…we will uphold the International's interpretation of its own governing documents unless that interpretation is patently unreasonable.

920 F. 2d at 1051-52.

In <u>Dow v. United Brotherhood of Carpenters</u>, 1 F. 3d 56 (1st Cir. 1993) the First Circuit addressed a power struggle over the position of business manager within a Carpenter local. Plaintiff Dow, the local's president, sought to appoint himself to a vacant position. The International interpreted the governing documents contrary to his wishes. The district court deferred to the International's interpretation and entered judgment for the Union. The First Circuit repeated the rationale for judicial restraint. First, the court noted "[i]t is common ground that a labor union's internal affairs comprise an enclave best kept free from judicial intrusion." 1 F. 3d at 58. Second, "The scope of judicial inquiry is narrowly circumscribed . . . when, as now, a labor organization's interpretation of its own constitution is singularly at issue." Finally, the Court, citing its own opinion in <u>Local 48</u>, <u>supra</u>, stated that "[i]n the absence of bad faith a labor organization's interpretation of internal union documents puts an end to judicial scrutiny so long as the interpretation is 'facially sufficient' or grounded in 'arguable authority'."

The First Circuit's approach to matters of internal union governance is well supported as a matter of national labor policy. <u>See</u> <u>Sim v. New York Mailers' Union No. 6</u>, 166 F.3d 465, 469-70 (2d Cir. 1999); <u>Local 334 v. United Ass'n of Journeymen</u>, 669 F.2d 129, 131 (3d Cir. 1982); <u>Newell v. International Bhd. Of Elec. Workers</u>, 789 F.2d 1186, 1189 (5th Cir. 1986); <u>Vestal v. Hoffa</u>, 451 F.2d 706, 709 (6th Cir. 1971), <u>cert. denied</u>, 406 U.S. 934 (1972); <u>Air Wisconsin Pilots Protection Comm. v. Sanderson</u>, 909 F.2d 213, 218 (7th Cir. 1990); <u>Washington v. Laborer's Int'l Union of N. Am.</u>, 792 F.2d 94, 96 (8th Cir. 1985); <u>English v. Cunningham</u>, 282 F.2d 848, 850 (D.C. Cir. 1960); <u>Napolitano v. International Union of Operating Eng'rs Local No. 4</u>, 872 F. Supp. 1085, 1088 (D. Mass. 1994); <u>Association of Contracting Plumbers of New York v. Local 2, United Association</u>, 676 F. Supp. 523 (SDNY 1988). This case ultimately turns on Defendant Service Employees International Union's interpretation of its own Constitution and

governing documents.  Because the International has interpreted its Constitution reasonably,

Plaintiffs have little likelihood of eventual success on the merits of its claim.

a.    **There is Ample Authority in the SEIU Constitution to Support the Actions and Decisions of the International Union that Are at Issue Here.**

The SEIU Constitution and Bylaws contains numerous provisions supporting the

International's decisions regarding Local 9 and its former provisional leadership.  For example,

Article III, Jurisdiction and Membership, establishes that the International Union has jurisdiction

over its Local Unions and their members.  V.C.: Ex. D at Art. III, § 2(a).  Article XIV provides

that the "International President or the International Executive Board may issue a charter

whenever it is deemed advisable" and that the "International Executive Board shall establish the

policy and procedures governing the issuance of charters".  Id. at Art. XIV, §§ 1 and 2.  Article

XV, Duties of Local Unions, includes the requirement that the "Constitution and Bylaws of all

Local Unions and affiliated bodies and amendments thereto must be submitted to the

International Union and approved before they become valid."  Id. at Art. XV, § 3.  That same

section provides the following regarding the priority of the International Constitution:

> notwithstanding such approval, the Constitution and Bylaws of all Local Unions
> and affiliated bodies shall at all times be subordinate to the Constitution and
> Bylaws of the International Union as it may be amended from time to time.  If a
> Local Union or an affiliated body shall not have secured the approval of a valid
> Constitution and Bylaws, the provisions contained in the Constitution and Bylaws
> of the International Union as it may be amended from time to time shall govern
> said Local Union and affiliated body insofar as applicable.

Id.  Article VIII confers duties and powers on the International President.  Included among them

is the general responsibility and authority for acting to further the "purposes and objects of the

organization and the interests of its members" and having "general supervision and direction

12

over the affairs of the International Union." Id. at Art. VIII, § 1(c) and (d). The International

President also has specifically enumerated authorities, including, relevant to this case, the power

to "appoint a hearing officer to examine the internal needs of the Local Union or affiliated body,

and to assist him/her in determining what remedial action(s), if any, should be implemented by

the Local Union or affiliated body." Id. at Art. VIII, § 7(g). Article XVII, § 2(f) provides the

basis for and procedures under which the International President may assume original

jurisdiction over charges against a member or officer of a Local Union.

The foregoing provisions make clear that SEIU locals not only owe their existence to the

International but that they remain creatures of the International, subject always to the jurisdiction

of the International. The International Union, and its Constitution and Bylaws, have an even

more pronounced authority over a Local such as Local 9 that is newly chartered and without an

approved constitution and bylaws of its own. See also 29 CFR 450.215 (regulations provide

international unions substantial discretion in organizing new local unions). The notions that the

International lacks authority to appoint provisional, or interim, officers in newly-chartered

Locals, or that it may not disapprove draft Local constitution and bylaws—especially where

those draft constitutions conflict with applicable law and the SEIU Constitution, of course find

no support in the SEIU Constitution. The International's treatment of Plaintiffs and its

interpretation of its own Constitution, was at all times completely reasonable. An International

Union has plenary authority to govern itself. Its authority may be limited only by external law or

by voluntarily imposed restrictions. An argument that SEIU may only act pursuant to an express

grant of constitutional authority is plainly wrong.[1]

---

[1] In Carpenters Local 1219 v. United Brotherhood of Carpenters, 1973 WL 979, 85 LRRM 2929 (D. Me 1973)
Judge Gignoux considered the complaint of a craft local (i.e., a local that had been chartered to represent millwrights
throughout the state of Maine) that the International Union had not supported its existence by preventing
geographical locals in the state of Maine from bargaining on behalf of millwrights. Plaintiffs complained that the

As noted above, in Carpenters, Local 48 v. Carpenters, 920 F.2d 1047 (1st Cir. 1990) the court rejected an LMRDA claim where the local whose existence was extinguished had voted against the merger. In Local 48 the court acknowledged that bad faith on the part of the international might form the basis for relief from an otherwise reasonable action.[2] There, as here, plaintiffs could adduce no evidence of bad faith.[3] Plaintiffs tip their hat to the bad faith exception but simply cannot characterize the SEIU's reasonable and cautious approach to chartering and establishing Local 9 as taken in bad faith. Importantly, that SEIU's actions and decisions may not ultimately have been in the best interests of Costa and Sullivan is completely immaterial to the question of bad faith. "The standard set forth by the First Circuit in Local 48 and adopted by the Second Circuit in Local 810 defines bad faith as actions contrary to the best interests of the international, not the rank-and-file." Mason Tenders Local Union 59 v. LIUNA, 924 F. Supp. 528, 546 (S.D. NY 1996).

### b. The Plaintiffs' claims will also fail because they have no rightful claim to positions on the Local 9 Board as interim officers.

Pursuant to the SEIU International Constitution, Article VIII, during the process of organizing a new local, the SEIU International President is empowered to appoint interim officers for up to a term of three years, at his discretion, so that the interim officers may develop, in collaboration with the local membership, a constitution and by-laws consistent with the

---

International had granted it "exclusive jurisdiction" over millwrights but had failed to support its exclusivity. Finding the constitution silent on the question of exclusivity, Judge Gignoux dismissed the action, holding "without a clear mandate to do so, courts are properly reluctant to interfere with the affairs of labor organizations." 1973 WestLaw 1979, * 5.

[2] 920 F.2d at 1055 ("bad faith in ordering a merger can be found on evidence that union officials acted contrary to the international's best interests, out of self-interest, or in an unconscionable or outrageous way.")

[3] 920 F.2d at 1056 ("Here, too, however, the absence of any cognizable evidence of bad faith is dispositive – for, as appellants themselves concede, the statutory remedies are animated by the motivation underlying the challenged action. . . . Absent proof of illicit motive, i.e., bad faith, appellants conclusory allegation that the merger was ordered to chill their expressive rights cannot withstand scrutiny.")

international union's constitution and by-laws. See id., supra, at Art. VIII, § 1(c) and (d).    In

this case, President Stern initially appointed Plaintiffs Costa and Sullivan to their respective

interim positions as president and secretary-treasurer for a term of three months on October 1,

2003, to end on December 31, 2003. VC: Ex. A.  Plaintiffs Costa and Sullivan were re-appointed

by President Stern for a term of one month, to end January 31, 2004.  VC: Ex. P. On January 31,

2004, both Plaintiffs' terms on the Local 9 board lapsed, and new interim officers, who had been

appointed by President Stern on January 30, 2004, began their terms in office.  Contrary to the

Plaintiffs' assertions, at no point during negotiations on the formation of Local 9 did

representatives of the International Union suggest or agree to allow them to serve as interim

officers for a term of one year.  Affidavit of McCullough.  Hence, the Plaintiffs have no basis for

their claim that they should remain as officers of Local 9 as a result of their bi-lateral agreement

with the International Union.

 Further, the Plaintiffs' claim that they were elected to their respective Local 9 board

positions in unit-wide elections is also without merit.  The International Union's constitution

provides the Union president explicit power to oversee and facilitate the organization of new

local unions.  Under the provisional by-laws approved by President Sterns, an election could not

take place without the Local's permanent by-laws and constitution first being approved by the

International Union and President Stern setting an election date.  Neither of these prerequisite

formalities were fulfilled before the Plaintiffs called for and held their "election" for local union

officers. Rather, the Plaintiffs sent the International Union proposed by-laws and a constitution

that were formulated undemocratically and that were inconsistent International Union's

constitution and by-laws; as a result, the International Union did not approve the Plaintiffs'

proposals.  Moreover, President Stern explicitly ordered  the Plaintiffs to cancel the elections

**Section 8.** Subject to the provisions of applicable statutes, every Local Union or member or officer thereof or officer of the International Union against whom charges have been preferred and disciplinary action taken as a result thereof or who claims to be aggrieved as a result of adverse rulings or decisions rendered, agrees, as a condition of membership or affiliation and the continuation of membership or affiliation, to exhaust all remedies provided for in the Constitution and Bylaws of the International Union and the Local Union and further agrees not to file or prosecute any action in any court, tribunal or other agency until those remedies have been exhausted.

Id. at Art. XVII, § 8.

Additionally, the Agreement to Establish an SEIU Local for Nurses at Boston Medical Center, which was executed in September 2003, contains a provision requiring that disputes under that agreement "shall be governed by the union's internal dispute procedures." V.C.: Ex. A.[6]

Plaintiffs cannot claim that whatever harm they may have suffered is irreparable when they have not even attempted to use the Constitutional and contractual remedies available to them (and to which they are obligated to resort). The Constitution contains numerous procedures for resolving internal disputes, up to and including an appeal to the next Convention. Plaintiffs have thus far exhausted none of the internal procedures. The hearing before the Hearing Officer has not yet closed. Plaintiffs have not suffered irreparable harm. The hearings begun in late January have not even closed, and the new hearing, scheduled for March 15, has not started.

The Plaintiffs provide no cases, nor are we aware of any, in which a court enjoined a hearing prior to its commencement in response to the potential harm that could result to the

---

[6] Certain disputes under the Agreement to Establish Local 9 may be submitted for arbitration: "with respect to the core commitment of the International Union to charter the new local and transfer the Boston Medical Center RN and LPN bargaining units (including all dues paid by these units after ratification), should the Parties have a dispute, the issue shall be submitted to a mutually agreed upon arbitrator for final and binding resolution. If the Parties cannot agree upon an arbitrator the issue will be submitted to the Labor Panel of the American Arbitration Association for final and binding arbitration." Ridge Aff., Ex. 1

moving party from a disfavorable ruling.   The hearing officer has yet to rule fully on the earlier charges brought against the Plaintiffs, much less the hearing pending for March 15.

A union which validly complies with its constitutional provisions should not be enjoined from using that process.  For example, in the context of establishing a trusteeship, the Court in Laborers' International Union Of North America, AFL-CIO, v. National Post Office Mail Handlers, Watchmen, Messengers And Group Leaders Division Of the Laborers' International Union Of North America, AFL-CIO and First American Bank, N.A.Laborers' International Union Of North America, AFL-CIO, 880 F.2d 1388, 279 U.S.App.D.C. 315 (D.C. Cir. 1989) refused to enjoin a hearing required by the union's constitution to be held prior to establishing a trusteeship.  In so ruling, the Court stated that the District Court did not have "the power to enjoin a hearing that under a union constitution is required, in the absence of an emergency, before a trusteeship may be declared."  This is because the "hearing itself does not constitute the "establishment" of a trusteeship; rather, it is an internal union proceeding that may or may not lead to a trusteeship."  Laborers' International Union Of North America, AFL-CIO, v. National Post Office Mail Handlers, Watchmen, Messengers And Group Leaders Division Of the Laborers' International Union Of North America, AFL-CIO and First American Bank, N.A.Laborers' International Union Of North America, AFL-CIO, 880 F.2d 1388, 1394.  In this case, a hearing has been called, but the outcome is not predetermined.  Thus, the Court cannot issue an injunction barring the hearing which is required by the Union Constitution.

The National Post Office Court also cited to the proposition that Union constitutions are contracts within the meaning of section 301(a) of the Taft-Hartley Act, 29 U.S.C. § 185(a). Laborers' International Union Of North America, AFL-CIO, v. National Post Office Mail Handlers, Watchmen, Messengers And Group Leaders Division Of the Laborers' International

Union Of North America, AFL-CIO and First American Bank, N.A.Laborers' International Union Of North America, AFL-CIO, 880 F.2d 1388, 1395.  The Court found that by enjoining a union from holding a pre-trusteeship hearing in accordance with its own constitution and bylaws, it would override the contractual rights of the union to hold such a hearing. The Court was not to rewrite union constitutions or to "prescribe detailed procedures and standards for the conduct of union business." Instead, Congress "recognized the desirability of minimum interference by Government in the internal affairs" of labor unions.  Laborers' International Union Of North America, AFL-CIO, v. National Post Office Mail Handlers, Watchmen, Messengers And Group Leaders Division Of the Laborers' International Union Of North America, AFL-CIO and First American Bank, N.A.Laborers' International Union Of North America, AFL-CIO, 880 F.2d 1388, 1395 (citing S.Rep. No. 187, 86th Cong., 1st Sess. 7, U.S.Code Cong. & Admin.News 1959, p. 2323 (1959)).

### 3.    THE BALANCE OF HARDSHIPS FAVORS THE DEFENDANTS.

While Plaintiffs have failed and refused to exhaust their internal remedies, and thus cannot establish irreparable harm, Defendants will suffer irreparable harm should an injunction issue.  Therefore, the balance of hardships tilts in their favor, not Plaintiffs'.

If the Court grants Plaintiffs' request for injunctive relief, Defendant will suffer irreparable harm.  In Mason Tenders Local Union 59, *supra*, both the local unions and the Laborers' International union had moved for injunctions.  The locals sought to enjoin the international from implementing a "reorganization plan" and the international sought to enforce the implementation.  Calling the showing of irreparable harm "perhaps the single most important prerequisite for the issuance of a preliminary injunction," the court looked to whether the parties had established irreparable harm.  924 F. Supp. at 542.  Both sides had made the requisite

showing. With respect to the international, the court held that "[t]o permit the Locals to disregard the [General Executive Board]'s directives causes LIUNA the 'substantial' hardship of depriving it of its right to self-governance in enforcing its constitution, to which the Locals are bound as subordinate bodies of LIUNA." 924 F. Supp at 543 (citing International Bhd. of Teamsters v. Local 810, 19 F.3d 786, 793 (2d Cir. 1994); Yager v. Carey, 143 L.R.R.M. (BNA) 2924, 2933, 1993 WL 328128 (D.D.C. 1993).[7]

If a restraining order is granted in this case, the Defendant will suffer significant irreparable harm. If the SEIU is unable to continue to move forward with the March 15 hearing, it will be unable to enforce the International Union's by-laws and constitution with regard to the organization of Local 9. The Plaintiffs continue to hold themselves out as officers of Local 9, and continue to organize BMC nurses under the guise of SEIU Local 9 for their own purposes, derailing legitimate organizing efforts by the new interim officers of Local 9. Additionally, the Plaintiffs have refused to turn over Local 9 financial documents or the Local 9 computers, and have only recently complied with the new interim officer's request for documents relating to on-going member grievances with BMC. Finally, the allegations to be examined at the March 15 hearing, if proven, directly implicate the Plaintiffs in substantial financial mismanagement and, potentially, fraud. If the March 15 hearing is enjoined, the Defendants will be unable to use the powers granted within the International Union's constitution to remedy alleged serious wrongdoing critically affecting the well being of Local 9.

Regarding the balance of hardships, Plaintiffs must show a tilt in their favor. As discussed above, the Plaintiffs are not entitled to positions as officers on the Local 9 Board and

---

[7] "Additionally, permitting the Locals to disregard the GEB's adoption of the Reorganization Plan would deprive the union and its members of the benefits of the Plan, and of the assets of the resisting Locals, which, under the Plan are to be seized by LIUNA immediately. It is indeed the obverse of the irreparable harm suffered by the Locals." 924 F. Supp. at 543.

the March 15 hearing is well within the authority of the SEIU International Union's
constitutional powers to investigate and prosecute internal charges within local unions.    The
Plaintiffs have not met their burden.

### 4. THE PUBLIC INTEREST WILL BE ADVERSELY AFFECTED BY THE ISSUANCE OF AN INJUNCTION.

The public interest supports judicial restraint in internal union affairs.    As discussed,
*supra*, courts have consistently supported this policy.    The Norris-LaGuardia Act expresses the
public policy that courts should be wary of enjoining the activities of labor unions.    In Burlington
N.R. Co.. v. Brotherhood of Maintenance of Way Employees, the Supreme Court noted that the
Norris-LaGuardia Act "expresses a basic policy against the injunction of activities of labor
unions." 481 U.S. 429, 437, 107 S.Ct. 1841, 1846 (1987).  *See also* Machinists v. Street, 367
U.S. 740, 773 (1961).

The other important public interest at stake in this case is the principle of union
democracy, as expressed in the LMRDA.  The public interest supports democratic self-
government in American labor unions.  The parties here accuse each other of behaving contrary
to this important principle, in an undemocratic manner.  The International received many
complaints from members of Local 9 about the decidedly undemocratic manner in which Costa,
Sullivan, and others drafted and attempted to get approval for a Local 9 constitution and bylaws,
and ran the Local, generally.  In response, the International Union, on numerous occasions,
encouraged the former provisional leadership to include a wider spectrum of membership views
in its processes. Pursuant to the International's provisions for internal remedies, a hearing before
a Hearing Officer was scheduled and held in response, partly, to a number of complaints from
members regarding "a variety of issues related to the democratic functioning of the local."  V.C.:
Ex. T.  Plaintiffs attempt to characterize their filing of the instant action as being in support of

21

the valued principles of union democracy and self-governance. Yet they have conspicuously declined to avail themselves of, or even to participate in, the democratic, internal remedies contained in the Constitution.  If the Court grants to Plaintiffs the relief they seek, the public interest in democratic self-government for labor organizations will be adversely affected.

**SERVICE EMPLOYEES INTERNATIONAL UNION**
By its attorneys,

David B. Rome, Esq., BBO #426400
Nicole Horberg Decter, BBO #658268
Pyle, Rome, Lichten & Ehrenberg, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

Dated:  March 11, 2004

22